**Rebecca TATMAN, Administratrix of the
Estate of Monte Tatman; Rebecca Tat-
man, individually, Plaintiffs–Appel-
lants,**

v.

**Bobby Wayne COLLINS; H & T Truck
Services, Inc., Defendants–Appellees.**

**No. 90–2611.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1991.

Decided July 9, 1991.

Harry G. Deitzler, argued (Crystal L.
Hawkins, George J. Joseph, Preiser Law
Offices, Charleston, W.Va., on brief), for
appellant.

---

Mary Hylton Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, W.Va., for appellees.

Before HALL and NIEMEYER, Circuit Judges, and KISER, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

During the course of trial in this personal injury litigation, the district court excluded the deposition of a treating physician offered by the plaintiff because (1) it had been taken only for discovery purposes, and (2) the witness was within 100 miles of the borders of the district (although more than 100 miles from the courthouse). Because the plaintiff's other critical expert testimony was dependent on the excluded deposition, the court struck that testimony and directed a verdict for the defendants. For the reasons that follow, we conclude that Fed.R.Civ.P. 32 was misapplied to exclude the deposition, and we reverse and remand the case for a new trial.

### I

On April 15, 1986, near Winfield, West Virginia, Monte L. Tatman, while in an automobile, was struck from the rear by a tractor-trailer driven by Bobby Wayne Collins. Tatman was treated by Dr. Joseph Amico, a doctor located in Columbus, Ohio, for injuries to his neck, back, shoulder and head. Almost a year later, Tatman was hospitalized with a cerebral aneurysm. He died on March 12, 1987, when the aneurysm ruptured.

In March 1988, Rebecca Tatman, Monte's wife, filed suit against Collins and his employer, H & T Trucking Services, Inc., in the Southern District of West Virginia, sitting in Charleston. The complaint alleges that Monte Tatman's death was causally linked to the injuries sustained in the accident. It alleges that the accident caused an uncontrollable rise and fall in Monte Tatman's blood pressure, which, in turn, caused the rupture of the aneurysm.

During discovery, the defendants took the deposition of Dr. Amico who testified to Tatman's treatment and gave an opinion that there was a causal connection between the injuries sustained in the accident and the subsequent rupturing of the aneurysm. When a scheduling conflict prevented Dr. Amico from coming to the trial, the plaintiff sought to introduce the deposition of Dr. Amico, pointing out the conflict in his schedule and noting that he was more than 100 miles from the courthouse. The court excluded the deposition because it was taken early in the case as a discovery deposition and the defense counsel should not be "chargeable" with it. The court also concluded that the deposition could not be used because Columbus, Ohio, where Dr. Amico was located, was within 100 miles of the northern border of the Southern District of West Virginia, even though more than 100 miles from the courthouse. J.A. 189–90. Because the only other witness linking Tatman's aneurysm with the accident, Dr. Cyril Wecht, relied on the testimony of Dr. Amico, the court struck Dr. Wecht's testimony and granted defendant's motion for a directed verdict on the wrongful death claim. The jury returned a verdict on the survivor's claim, finding Collins negligent but finding that Tatman's injury was not caused by the accident.

### II

■ In refusing to admit the deposition of Dr. Amico because it was a "discovery" deposition rather than one taken for use at trial, the district court stated, "the deposition that's involved here is a discovery deposition; it is one that was taken by the defense counsel at an early juncture in the case; it is one that the defense counsel should not be chargeable with at last minute—at the trial because plaintiff's counsel did not produce the physician." J.A. 189.

The Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (*de bene esse*). *See* Rule 32 (use of depositions in court proceedings). Moreover, we are unaware of any authority which makes that distinction. *See Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 724 (5th

Cir.1980) (no authority "in support of the proposition that discovery depositions may not be used at trial against the party who conducted them"); *United States v. IBM Corp.*, 90 F.R.D. 377 (S.D.N.Y.1981). In *IBM Corp.* the court provided a historical explanation of how any distinction between a "discovery" deposition and a *"de bene esse"* deposition was deliberately eliminated from the rule:

> Prior to the revision of the Federal Rules of Civil Procedure in 1970, Rule 26(a) provided that depositions could be taken "for the purpose of discovery or for use as evidence in the action or for both purposes." Rule 26(d), the predecessor of Rule 32(a), which governed the use of depositions at trial, did not, however, state any distinction between discovery and evidentiary depositions. Recognizing a possible ambiguity in the rule, courts nevertheless refused to recognize a distinction between "discovery" and "evidentiary" depositions with regard to admissibility at trial. When the subject matter of Rule 26(a) was transferred to Rule 30(a) in the 1970 revision of the rules, the language authorizing depositions "for the purpose of discovery or for use as evidence in the action or for both purposes" was omitted.

90 F.R.D. at 381 n. 7 (citations omitted).

■ Fed.R.Civ.P. 32 provides that a deposition may be offered at trial, subject to the rules of evidence, as though the witness were present and testifying, and no distinction is now made in the rule with respect to the purpose for which the deposition was taken. While the rule makes distinctions in the circumstances when depositions of parties and witnesses may be used, it provides in section (a)(3) that when a witness is unavailable as therein provided, the deposition of the witness may be used for any purpose. Parties cognizable of the rule can overcome limitations of the deposition format and its timing in the discovery process by appropriate cross-examination, objections, and motions as permitted by Rules 30 and 32 (both of which govern depositions), Rule 29 (regarding stipulations), and Rule 26 (governing discovery in general). When, as here, the witness' deposition was duly noticed and all parties had the opportunity to attend (and did attend), it may be introduced at trial, subject to the rules of evidence, if the witness is unavailable as described in Rule 32(a)(3). It is irrelevant to the issue that one party or the other initiated the deposition, that it was initiated only for discovery purposes, or that it was taken before other discovery was completed.

■ The district court, of course, is afforded broad discretion to admit or exclude any deposition testimony by applying the rules of evidence. But it cannot exclude deposition testimony on the basis that the defendant intended that the deposition be taken for discovery purposes and did not expect that it would be used at trial.

### III

■ The district court also excluded Dr. Amico's deposition because Columbus, where Dr. Amico was located, is within 100 miles of the border of the Southern District of West Virginia, although more than 100 miles from the courthouse in Charleston where the trial was taking place. This interpretation of Rule 32 is also one with which we do not agree.

Rule 32(a)(3)(B) provides that a deposition may be admitted if the witness is "at a greater distance than 100 miles from the *place of trial*" (emphasis added). We hold that for purposes of applying the rule the place of trial is the courthouse where the trial takes place. It is apparent that the rule is intended to protect the convenience of the witness and the parties, and that the limit of convenience is measured by the 100-mile distance. To measure a distance from the borders of the district, as defendants argue, rather than from the courthouse, would provide a variable standard of convenience, depending on the size of the district, the location of the trial, and the location of the witness. Had the drafters of the rule intended that the calculation of the 100 miles be made from the borders of the district they could have so specified. It is noteworthy that the language defining the scope of the subpoena power under Rule 45(e) distinguishes itself from Rule 32(a)(3)(B) by permitting service within 100

miles of the place of trial *or* anywhere within the district (even if it is more than 100 miles). That distinction suggests that the "place of trial" as used in Rule 32(a)(3)(B) is a locus more definite than the entire district. *See IBM Corp.*, 90 F.R.D. at 380.

Although few courts have specifically addressed the meaning of "place of trial," several cases dealing with Rule 32 have interchanged "courthouse" for the "place of trial." *See, e.g., United States v. Vespe*, 868 F.2d 1328, 1339 (3rd Cir.1989) (Rule 32 "permits the deposition of a witness who is more than one hundred miles from the *courthouse*.") (emphasis added); *Starr v. J. Hacker Co., Inc.*, 688 F.2d 78, 81 (8th Cir.1982) ("At no time has it been suggested that these witnesses were within 100 miles of the *courthouse*.") (emphasis added).

Because Dr. Amico was beyond 100 miles of the courthouse and no showing was made that his absence was procured by a party (on the contrary, his professional commitment prevented his coming), his deposition was not properly excludable on the ground that he was within 100 miles of the borders of the district.

The court may have had the discretion to exclude Dr. Amico's deposition on various grounds, as suggested in the dissenting opinion. However, because the grounds given for excluding Dr. Amico's deposition were in error and the exclusion of Dr. Wecht's testimony (which was critical to plaintiff's case) was based on the exclusion of Dr. Amico's deposition, we reverse and remand the case for a new trial of both the wrongful death and survivor's claims.

REVERSED AND REMANDED

K.K. HALL, Circuit Judge, dissenting:

I agree with the salient legal points of the majority opinion. The district court misstated the "100–mile" rule, and there is no categorical exclusion of "discovery" depositions at trial.

On the other hand, the district court has broad discretion on questions of admissibility of evidence and broad power over the management of litigation before it. In order to avoid disputes like this one, the district court required the parties to prepare an integrated pretrial order. Plaintiff disclosed that Dr. Amico would be a witness, but did not propose to offer his deposition. The defendants had no notice of plaintiff's intention to use the deposition; the deposition was taken at the earliest stages of the litigation. The rules of civil procedure *permit* the admission of Amico's deposition, but they do not *require* it. The district court concluded that it would be unfair to ambush the defendants with the deposition at the last moment. I do not believe that this ruling was an abuse of discretion.

Amico's deposition, at least to the extent it expressed an opinion, would have drawn a meritorious motion to strike anyway. Both parties agree that the accident had nothing to do with the existence of the aneurysm, which was a congenital condition. The theory of plaintiff's case is that the minor truck collision * caused Tatman's blood pressure to rise uncontrollably, which in turn caused the aneurysm to rupture when it did. As merely stating this theory reveals, proximate causation was the weak link of plaintiff's case. More roadblocks were presented by Tatman's chronic obesity and resulting long history (from at least 1981) of high blood pressure.

The district court may admit expert opinions that "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Even where the testimony would provide this assistance, the court may exclude it if its probative value is outweighed by its unfairly prejudicial effect. Fed.R.Evid. 403. District courts should be mindful of Rule 403 when "expert" opinions are offered that stretch

---

* I should describe the severity of the impact, lest it be implicitly overstated by silence. The collision was at such a low speed that it caused only $55.28 of damage to Tatman's vehicle. The uncontradicted opinion of an accident reconstruc-tion expert who testified for the defendants placed the force of the impact as equal to that experienced during ordinary braking, though from the opposite direction.

the limits of available supporting evidence. The very label "expert" is prejudicial in a way, because it might lead jurors to lend more credence to an opinion than it deserves.

Dr. Amico is an osteopath who treated Tatman for his back and neck pain following the accident. In the deposition at issue, Amico testified that he did not treat Tatman for high blood pressure at this time, and had not treated him at all for three years prior to the accident. Though Tatman's blood pressure was usually taken at office visits, Amico provided no examples of the supposed wide swings and did not explain their significance or why he was not alarmed by them while Tatman was alive. He did not even know what blood pressure medication Tatman was taking at the time, though Tatman confessed not taking his medication regularly on at least one office visit.

Dr. Wecht, who never met Tatman, was even more in the dark than Amico. He had not reviewed the records of a physician who actually treated Tatman for hypertension in 1985. He did not know anything about Tatman's life or sources of stress in it other than the accident, including one family incident that drove Tatman to seek psychiatric counseling. The district court, which observed Wecht's live testimony, commented, "It was quite obvious that Doctor Wecht didn't think he needed evidence to base his opinion on." My review of his testimony from the admittedly cold record yields the same observation.

Conjecture does not substitute for proof merely by being filtered through a willing expert's mouth. With or without the proffered expert testimony, a fair-minded trier of fact could not have found proximate causation established. Accordingly, I would affirm.

I respectfully dissent.