Payman BARAZ, Plaintiff,

v.

UNITED STATES of America, John Hayden, Javier Olmos, Joseph Rodezno, Jesse Castellanos, and Victor Proctor, Defendants.

No. CV 96–2521 DT (CTX).

United States District Court,
C.D. California.

July 6, 1998.

**450**

William J. Genego, Virginia F. Flack, Law Offices of William J. Genego, Paul L. Hoffman, Bostwick & Hoffman, Santa Monica, CA, for Payman Baraz.

Frank W. Hunger, Helene M. Goldberg, R. Joseph Sher, Nina Pelletier, United States Department of Justice, Washington DC, for United States of America, John Hayden, Javier Olmos, Joseph Rodezno, Jesse Castellanos and Victor Proctor.

ORDER **DENYING** DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 41(d) AND 37(d) FOR PLAINTIFF'S FAILURE TO ATTEND HIS DEPOSITION.

TEVRIZIAN, District Judge.

## I. Background

### A. Factual Summary

This action is brought by Plaintiff Payman Baraz ("Baraz"), a citizen of Iran, against the following Defendants: Special Agent John Hayden ("Hayden") of the Immigration and Naturalization Service ("INS"); Detention Officer Javier Olmos ("Olmos") of the INS; Detention Officer Joseph Rodezno ("Rodezno") of the INS; Detention Officer Jesse Castellanos ("Castellanos") of the INS; and Detention Officer Victor Proctor ("Proctor") of the INS. Plaintiff's claims are against these INS employees in their individual and official capacities. Plaintiff alleges that Defendant United States is responsible for the acts of the individual Defendants.

Plaintiff's First Amended Complaint alleges the following claims:

1. Violation of the Plaintiff's Fourth Amendment rights against the individual Defendants;

2. Violation of the Plaintiff's Fifth Amendment rights against the individual Defendants;

3. Assault against all Defendants;

4. Battery against all Defendants;

5. Malicious Prosecution against all Defendants;

6. Negligent Hiring and Supervision against Defendant United States.

Plaintiff alleges that on April 10, 1995, while Plaintiff was in custody at the INS Detention Facility at 300 North Los Angeles Street in Los Angeles, Defendants Hayden and Olmos beat, pushed, and kicked Plaintiff repeatedly. First Amended Complaint

("FAC") at ¶¶ 14–16. Plaintiff alleges that Defendants Rodezno, Castellanos, and Proctor observed the attack and brought leg irons to Defendant Hayden in order to restrain the Plaintiff. FAC at ¶ 15.

On April 11, 1995, Plaintiff was charged with assault of a federal officer in violation of 18 U.S.C. § 111. FAC at ¶ 22. Plaintiff alleges that the § 111 prosecution was commenced as a result of false statements made by the individual Defendants in this action. FAC at ¶¶ 21–23. Plaintiff was acquitted of this charge on June 30, 1995. FAC at ¶ 24.

Plaintiff was later deported in 1996, and returned to his native country of Iran. Plaintiff's Memo of P's and A's re: Stipulation to Extend Discovery Cut-off, 2:13–14. Defendants initially noticed Plaintiff's deposition in this action for July 22, 1997. *Id.* at 2: 17–23. Plaintiff was unable to attend this deposition because of two separate immigration restraints: (1) he was not permitted to leave Iran, and (2) he was not allowed to enter the United States.[1] *Id.* Because this Court found that Plaintiff had not acted willfully and in bad faith in failing to appear for his July 22, 1997 deposition, the discovery cut-off date in this matter was continued to May 27, 1998.

### B. Procedural History

On April 9, 1996, Plaintiff filed his Complaint in this Court, alleging violation of his Fourth and Fifth Amendment rights.

On June 27, 1996, Plaintiff filed his First Amended Complaint in this Court, adding claims for assault, battery, malicious prosecution, and negligent hiring and supervision.

On July 23, 1997, Plaintiff filed an Ex Parte Application to Extend Discovery Cut-Off from August 1, 1997 to August 22, 1997. The Application was granted by this Court on July 23, 1997.

On August 28, 1997, Defendants filed a Motion to Dismiss for Plaintiff's Failure to Attend His Own Deposition pursuant to Federal Rule of Civil Procedure 37(d), which this Court denied on September 19, 1997.

On December 5, 1997, this Court vacated the previously set discovery cut-off date of

November 22, 1997. The new date of May 27, 1998 was established for discovery cut-off.

On June 9, 1998, Defendants filed a Motion to Dismiss Pursuant to Fed.R.Civ.P. 41(b) and 37(d) for Plaintiff's Failure to Prosecute, which is before this Court today.

## II. Discussion

### A. Standard

When a party fails to attend her own deposition, Rule 37(d) provides that a court may on motion make "such orders in regard to the failure as are just," and may also impose sanctions as provided under subparagraphs (A), (B), and (C) of Rule 37(b)(2). Rule 37(b)(2)(C) allows dismissal of an action as a sanction for discovery violations. However, dismissal is generally appropriate only in "extreme circumstances," and upon a showing that the failure to attend the deposition was due to "wilfulness, bad faith, or fault" on the part of the party against whom the dismissal is sought. *Wiltec Guam, Inc. v. Kahaluu Const.,* 857 F.2d 600, 603 (9th Cir.1988). Disobedient conduct not shown to be outside the control of a litigant is sufficient to demonstrate willfulness, bad faith, or fault. *Hyde & Drath v. Baker,* 24 F.3d 1162, 1167 (9th Cir.1994).

Dismissal under Rule 37(b)(2)(C) also requires that the court consider (1) the public interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; (5) the availability of less drastic sanctions. *Wiltec Guam,* 857 F.2d at 603. When the attendant circumstances are less than "egregious," the court should consider giving an explicit warning before dismissal. *Id.* at 605.

### B. Analysis

*1. Dismissal is Not Warranted Where Plaintiff has Diligently Attempted to Comply With the Court's Order to Appear for his Deposition.*

Defendants bring this motion to dismiss because of Plaintiff's inability to attend his

---

**1.** It appears that Plaintiff was later granted permission to leave Iran. For reasons stated *infra* however, he is still unable to enter the United States.

deposition in the instant matter.[2] Defendants contend that they are entitled to depose Plaintiff in person to assess his demeanor and credibility in order to adequately prepare for summary judgment or trial in this matter. Because Plaintiff is unable to attend his deposition, Defendants contend that this Court is well within its discretion to dismiss this action.

■ In opposition, Plaintiff initially argues that the extreme sanction of dismissal is not warranted because Plaintiff's inability to comply with the Court's order to appear for his deposition was not within his control. Plaintiff further contends that in this case, no unreasonable delay has occurred which might justify dismissal. "[O]nly unreasonable delay will support a dismissal for lack of prosecution, and unreasonable is not inherent in every lapse of time." *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir.1980). Plaintiff argues that because Defendants have not asserted that the delay was unreasonable, the motion should be denied. Plaintiff also asserts that the motion should be denied because the delay has caused no prejudice to Defendants.

■ As an initial matter, this Court finds that Defendants have failed to demonstrate that Plaintiff's failure to attend his deposition was the result of wilfulness, bad faith, or fault on Plaintiff's part. To the contrary, it appears that Plaintiff has diligently attempted to gain entry into the United States for the purpose of attending his own deposition. *See* Exhibit "A," Plaintiff's Opp. to Motion to Dismiss. Although the public's interest in expeditious resolution of litigation and the Court's need to manage its docket are factors to consider in favor of a dismissal, equity will not allow such a result. The public policy favoring disposition of cases on their merits weighs against the factors in favor of dismissal with greater force.

■ This Court believes that the interests of justice would best be served by allowing Plaintiff to testify in the instant matter via (1) telephonic deposition, and/or (2) written interrogatories pursuant to Fed.R.Civ.P. 32(a)(3)(B). Further, the court may order a deposition if "such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court." *Id.; see also Tatman v. Collins*, 938 F.2d 509, 511 (4th Cir.1991)—deposition admitted in lieu of testimony because witness lived more than 100 miles from the courthouse. Moreover, foreign nationals or U.S. citizens living abroad who are parties to an action are subject to this Court's personal jurisdiction and may be deposed wherever the Court directs. However, such parties are usually deposed where they reside—i.e., courts rarely require them to return to the United States to have their depositions taken. *In re Anschuetz*, 754 F.2d 602, 608, fn. 13, *vacated and remanded*, 838 F.2d 1362. In this case the Court takes judicial notice that the relations between the countries of Iran and the United States of America do not presently permit the taking of Plaintiff's deposition in person in either Iran or the United States.

■ Indeed, the power of the district court to conduct discovery in the most appropriate manner is broad. The Supreme Court of the United States reaffirmed this principle in *Societe Nationale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). In *Societe*, the high Court held that the plain language of the Hague Convention unambiguously supports the conclusion that it was intended to establish optional procedures for obtaining evidence abroad. *Id.* The *Societe* Court further emphasized that the district court has complete discretion to determine the most appropriate manner of producing evidence in the case before it.[3] *Id.* at 544,

2. In May, 1998, Plaintiff received a letter from the INS notifying him that his request for parole entry into the United States for the limited purpose of giving a deposition in a civil matter was denied. The INS cited two reasons for denying Plaintiff a limited parole entry: (1) the circumstances of this case do not rise to the level that

would permit the use of the Attorney General's parole authority; and (2) Plaintiff's presence in the United States would pose a danger to the public welfare. *See* Exhibit 1, Def. Memo of P's and A's.

3. The fact that Iran is a nonsignatory nation to the Hague Convention, 28 U.S.C. § 1871, further

107 S.Ct. at 2556–57. In the instant case, this Court finds that a telephonic deposition, and/or written interrogatories are the most appropriate mechanisms in which to elicit the Plaintiff's testimony. The interests of justice preclude the Government from foreclosing Plaintiff's ability to be deposed with one hand, and then tossing out his lawsuit for an inability to be present at the deposition with the other. This would be analogous to the Government shutting down the postal service, and then penalizing its citizens for failing to mail in their taxes. Allowing the evidence to be presented in the aforementioned manner further comports with the public policy favoring disposition of cases on their merits, as well as the Court's interest in applying less drastic sanctions.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is **denied.**

IT IS SO ORDERED.

affirms this Court's ability to conduct discovery in this manner. The *Societe* Court held that a district court may use the procedures outlined in the Hague Convention, but is not obligated to do so. If the Hague Convention does not apply, clearly then, a district court may use any appropriate method to obtain evidence abroad.