# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2021

Lyle W. Cayce
Clerk

No. 20-50604

Spectrum Association Management of Texas, L.L.C.,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Lifetime HOA Management L.L.C.; Jay Tuttle,

*Defendants—Appellants/Cross-Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-940

Before Dennis and Engelhardt, *Circuit Judges*, and Hicks,[*] *Chief District Judge*.

Kurt D. Engelhardt, *Circuit Judge*:

Spectrum Association Management of Texas, L.L.C. ("Spectrum") sued Lifetime HOA Management, L.L.C. ("Lifetime") and Jay Tuttle (collectively the "Lifetime Defendants") for trademark violations under the Lanham Act. Spectrum was awarded statutory damages following a bench trial. The district court declined to award Spectrum attorneys' fees.

---

[*] Chief District Judge for the Western District of Louisiana, sitting by designation.

No. 20-50604

The Lifetime Defendants now appeal the damages award and the district court's admission of a witness's deposition testimony at trial. Spectrum cross-appeals the district court's decision not to award attorneys' fees. For the following reasons, we AFFIRM IN PART and REVERSE AND REMAND IN PART.

I.

Spectrum provides management services to homeowners' associations in San Antonio, marketing these services under its federally registered trademarks—all of which include the words "Spectrum Association Management"—and under its internet domain name "spectrumam.com." Tuttle served as Spectrum's Director of Business Development until April 2015, when he left the company. Pursuant to his employment contract with Spectrum, Tuttle was prohibited from competing with Spectrum for one year after his departure.

In February 2016, Tuttle assisted in forming Lifetime, a company that offers the same type of homeowners' association management services in San Antonio as those provided by Spectrum. In May 2016, Tuttle registered the internet domain "Spectrumhoamanagement.com" (the "Infringing Domain") on behalf of Lifetime. Internet users who entered the Infringing Domain into a web browser were automatically forwarded to "www.lifetimehoamanagement.com," Lifetime's marketing website for its services. The Lifetime Defendants chose the Infringing Domain and set up the forwarding mechanism with the intent to confuse internet users looking for Spectrum's services and divert those individuals to Lifetime's website, which offered substantially similar services.

After Spectrum discovered the Infringing Domain in 2018, it filed the underlying lawsuit, alleging that the Lifetime Defendants violated the Anti-Cybersquatting Consumer Protection Act ("ACPA") section of the Lanham

No. 20-50604

Act and requesting damages and permanent injunctive relief. Spectrum ultimately elected to seek statutory damages pursuant to 15 U.S.C. § 1117(d).

The lawsuit originally was assigned to a district judge sitting in the San Antonio Division of the Western District of Texas; however, the case was later reassigned to a district judge sitting in the Waco Division of that same district. Despite the reassignment, the case remained docketed in the San Antonio Division for the duration of the lawsuit. On October 20, 2019, all counsel were notified that trial would take place in Waco, not San Antonio. On January 2, 2020, Spectrum's pretrial filings identified Spencer Powell, a former Lifetime partner, as a witness whose testimony was expected to be presented at trial by means of his deposition transcript.

The district court conducted a bench trial in Waco on February 4, 2020. When Spectrum moved to admit Powell's deposition testimony, the Lifetime Defendants objected, arguing that there was no permissible use for this testimony under Rule 32(a). Spectrum responded that because Powell resided in San Antonio, a city located more than 100 miles from the place of trial, he was an unavailable witness whose deposition testimony was admissible under Rule 32(a)(4)(B). The district court agreed with Spectrum, overruled the objection, and admitted Powell's deposition testimony.

Following trial, the district court found that the Lifetime Defendants violated the ACPA by registering and using the Infringing Domain, which was confusingly similar to Spectrum's trademarks. The district court issued a final judgment that awarded Spectrum $100,000 in statutory damages and permanently enjoined the Lifetime Defendants' infringement of Spectrum's trademarks. The district court declined to award Spectrum attorneys' fees. The Lifetime Defendants challenged the damages award and the admission of Powell's deposition testimony in a motion to alter or amend the judgment,

No. 20-50604

or alternatively, for new trial, which the district court denied. This appeal and cross-appeal followed.

The Lifetime Defendants argue that the district court erred in admitting Powell's deposition testimony at trial and further erred in imposing an excessive statutory damages award. Spectrum, in turn, contends that the district court erred in declining to award attorneys' fees.

## II.

A district court's damages award is a finding of fact, which we review for clear error. *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006). We review de novo the conclusions of law underlying a damages award. *Id.*

A district court's evidentiary findings are reviewed under an abuse of discretion standard. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 667 (5th Cir. 1999). Evidentiary rulings are additionally subject to harmless error review, "so even if a district court has abused its discretion, we will not reverse unless the error affected the substantial rights of the parties" *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 327 (5th Cir. 2017) (citation omitted).

We review all aspects of a district court's fee determination under the Lanham Act—including its conclusion on whether a case is "exceptional"—for abuse of discretion. *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019).

## III.

A. Admission of Spencer Powell's Deposition Testimony

The Federal Rules of Civil Procedure permit a party to use a witness's deposition testimony "for any purpose" if the court finds that the witness is unavailable by reason of residing "more than 100 miles *from the place of hearing or trial* or is outside the United States, unless it appears that the

4

witness's absence was procured by the party offering the deposition." FED. R. CIV. P. 32(a)(4)(B) (emphasis added).

The Lifetime Defendants do not dispute that Powell, a San Antonio resident, lived more than 100 miles from Waco, the physical location of trial. Instead, they argue that we should interpret "the place of hearing or trial" under Rule 32(a)(4)(B) as the location of the division governing the lawsuit. Under this reading, they contend that Powell was not an unavailable trial witness, because he resided within 100 miles of the San Antonio Division, which governed the trial proceedings in this case. The Lifetime Defendants cite no authority to support their proposed interpretation of Rule 32(a)(4)(B).

We do not agree that "the place of trial" under Rule 32(a)(4)(B) refers to the division governing the lawsuit. Although there is no Fifth Circuit decision directly on point, we are persuaded by the reasoning of a Fourth Circuit decision that squarely addressed the issue. *See Tatman v. Collins*, 938 F.2d 509 (4th Cir. 1991).[1] In *Tatman*, the district court refused to admit a witness's deposition testimony at trial, in part, because the witness resided within 100 miles of the border of the district governing the case—even though the witness resided more than 100 miles from the courthouse where trial was taking place. *Id.* at 510. The Fourth Circuit reversed the district court's decision, finding that "the place of trial is the courthouse where the trial takes place." *Id.* at 511. It reasoned that measuring distance from the borders of the district rather than from the courthouse would provide a variable standard of convenience dependent on the size of the district, the location of the trial, and the location of the witness. *Id.* The Fourth Circuit

---

[1] Although the Fourth Circuit examined a previous version of the Federal Rules of Civil Procedure with the relevant subsection listed as Rule 32(a)(3)(B), the language of the current subsection, Rule 32(a)(4)(B), remains the same.

further noted that the drafters of Rule 32 specifically used the language "place of trial," rather than "the district" or other location descriptors found in the Federal Rules of Civil Procedure. *Id.* We agree with the Fourth Circuit that the plain text of Rule 32(a)(4)(B) is clear that "the place of trial" is the courthouse where trial takes place.

The Lifetime Defendants further argue that they purposefully and strategically declined to cross-examine Powell at his deposition under the assumption that they would have the opportunity to cross-examine him as a live witness at a San Antonio trial. They contend that they were prejudiced when the district court relocated trial from San Antonio to Waco, which disrupted their original litigation strategy and prevented them from cross-examining Powell.

We disagree that the Lifetime Defendants were prejudiced by the transfer of trial venue from San Antonio to Waco. On October 20, 2019—3.5 months before trial—the Lifetime Defendants were notified that trial would take place in Waco. At no point during this period did the Lifetime Defendants request leave to depose Powell a second time to conduct the cross-examination they had originally reserved for trial. *See* FED. R. CIV. P. 30(a)(2)(A)(ii). Further, the Lifetime Defendants were notified of Spectrum's intent to introduce Powell's deposition testimony on January 2, 2020—approximately one month before trial—and failed to timely object to use of that testimony on Rule 32(a) grounds, thus waiving any such objection. *See* W.D. TEX. CIV. R. 16(f). Nor is there anything in the record indicating that the Lifetime Defendants sought to commit their cross-examination to a deposition after Spectrum's January 2 disclosure.

For the foregoing reasons, the district court did not abuse its discretion in admitting Powell's deposition testimony at trial, and we affirm that decision. *Curtis*, 174 F.3d at 667.

No. 20-50604

B. Statutory Damages Award

Under the ACPA, "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).

We apply legal standards derived from copyright law to our review of a statutory damages award under the ACPA.[2] *See E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (stating that ACPA's statutory damages provisions "are akin to the statutory damages provisions of the copyright laws"); *see also Kiva Kitchen & Bath Inc. v. Cap. Distrib. Inc.*, 319 F. App'x 316, 320–21 (5th Cir. 2009). Copyright law affords district courts broad discretion to impose damages awards within the bounds of statutory damages provisions. *Douglas v. Cunningham*, 294 U.S. 207 (1935) (finding that "the employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case"); *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 237 (5th Cir. 1988) (stating that district courts have "wide discretion" under copyright law "to award anything" within limits of statutory damages provision).

In an unpublished decision, we identified several factual considerations relevant to our review of a statutory damages award under the ACPA. *Kiva*, 319 F. App'x at 320–21. The plaintiff and defendants in *Kiva*

---

[2] *Compare* 15 U.S.C. § 1117(d) *with* 17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.").

were competitors that sold home appliances in Dallas. *Id.* at 318. The plaintiff sued the defendant company and its owner under the ACPA based, in part, on the defendants' registration of three internet domain names similar to the trade names for the plaintiff's Dallas store and for causing internet users entering those domain names to be redirected to the defendants' website. *Id.* After a jury found the defendants liable under the ACPA, the district court imposed the maximum statutory damages award of $100,000 for each of the three infringing domains. *Id.* at 320.

On appeal, we affirmed the award as "just" under § 1117(d) based on the following facts: the parties directly competed to provide similar services in Dallas, the defendants exhibited a bad-faith intent to divert the plaintiff's potential customers to their website, and the defendants refused to stop forwarding the infringing domains or transfer them to the plaintiff until just a few weeks before trial. *Id.* at 320–21. *Kiva* noted several other relevant considerations for assessing a statutory damages award under the ACPA, including willfulness and deliberateness of the infringer's violation, restitution of profit, reparation for injury, and discouraging wrongful conduct. *Id.* at 320.

In this case, the $100,000 damages award for the Infringing Domain satisfies the ACPA requirement that the amount of statutory damages be "not more than $100,000 per domain name." 15 U.S.C. § 1117(d). This award falls within the district court's broad discretion in applying § 1117(d). *Kiva*, 319 F. App'x at 320. Further, the district court's factual findings are similar to those supporting the maximum statutory damages award in *Kiva*. Spectrum and Lifetime directly compete to provide the same type of services in San Antonio. In addition, the record confirms that the Lifetime Defendants violated Spectrum's trademarks willfully and in bad faith by engaging in the following conduct: establishing Lifetime as Spectrum's competitor while Tuttle was under his non-compete agreement with

No. 20-50604

Spectrum; registering the Infringing Domain with prior knowledge of Spectrum's trademarks; purchasing the Infringing Domain in the hopes of eventually selling it to Spectrum for a profit; and setting up the Infringing Domain to confuse and divert internet users who sought Spectrum's services. The Lifetime Defendants demonstrated further willfulness during the underlying lawsuit by showing a disregard for their submission of inconsistent, misleading, and inaccurate answers to written discovery. Additionally, the Lifetime Defendants' bad-faith conduct continued after trial, when they blatantly copied text from Spectrum's copyright-protected web pages for use on Lifetime's website. Finally, there is no record evidence that the Lifetime Defendants offered to transfer the Infringing Domain to Spectrum.

The Lifetime Defendants rely on two district court decisions from California in support of their argument that the statutory damages award was excessive. These decisions do not present the same set of factual findings made by the district court in this case and do not provide any binding precedent for reversal.

For these reasons, the district court did not clearly err in awarding Spectrum $100,000 in statutory damages, which we affirm. *Jauch*, 470 F.3d at 213.

C. Attorneys' Fees

The Lanham Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). To make an "exceptional case" showing, the prevailing party bears the burden of demonstrating by clear and convincing evidence that the defendant "maliciously, fraudulently, deliberately, or willfully infringes the plaintiff's mark." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002). The prevailing party must further demonstrate "a high degree of

No. 20-50604

culpability on the part of the infringer," such as bad faith. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). "We have used 'bad faith' as a short-hand for conducting this inquiry, but we also have instructed district courts to consider all the facts and circumstances to determine whether a case is exceptional[.]" *Procter & Gamble*, 280 F.3d at 527 (internal citation omitted).

Additionally, an award of attorneys' fees "may be warranted either where the prevailing party stood out in terms of the strength of its litigating position or where the non-prevailing party litigated the case in an 'unreasonable manner.'" *All. for Good Gov't*, 919 F.3d at 295 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

As discussed above, the record of this case confirms that the Lifetime Defendants engaged in willful, bad-faith infringement of Spectrum's trademarks, justifying an award of maximum statutory damages. The overwhelming evidence against the Lifetime Defendants illustrates the sheer strength of Spectrum's litigation position. Moreover, the Lifetime Defendants' disregard for their submission of inconsistent, misleading, and inaccurate answers to written discovery—including not admitting Spectrum was a competitor, failing to identify the clients they obtained from Spectrum, and misrepresenting that they had conducted a diligent search of the number of times the Infringing Domain was accessed—demonstrates that they litigated this case in an unreasonable manner.

In declining to award attorneys' fees, the district court noted that the Lifetime Defendants' actions were certainly willful, but they did not rise to the level of the egregious conduct exemplified in cases like *Kiva*. In *Kiva*, the district court awarded attorneys' fees to the plaintiff, finding that the case was "exceptional" based on the defendants' bad-faith intent to use multiple infringing internet domains to divert the plaintiff's potential customers to the

defendants' website. *Kiva*, 319 F. App'x at 321. We affirmed that award on appeal. *Id.* at 322.

We disagree with the district court that the facts of this case are less egregious than *Kiva*. Like the defendants in *Kiva*, the Lifetime Defendants acted in bad faith by registering and using an infringing internet domain with the intent to divert a direct competitor's potential customers to Lifetime's website. Further, the facts of this case are even more egregious than *Kiva*, because the Lifetime Defendants never offered to transfer the Infringing Domain to Spectrum, whereas the *Kiva* defendants made such an offer to the plaintiff shortly before trial. Finally, the Lifetime Defendants engaged in post-trial misconduct by blatantly copying text from Spectrum's website— evidence of willfulness and bad faith that was not present in *Kiva*.

For these reasons, we find that this case is exceptional and that the district court abused its discretion in declining to award Spectrum attorneys' fees. *All. for Good Gov't*, 919 F.3d at 295. We reverse this finding and remand to the district court for a determination of reasonable attorneys' fees. 15 U.S.C. § 1117(a).

## IV.

For the foregoing reasons, we (1) AFFIRM the district court's admission of Spencer Powell's deposition testimony at trial; (2) AFFIRM the district court's statutory damages award; and (3) REVERSE the district court's finding that Spectrum was not entitled to attorneys' fees and REMAND for a determination of reasonable attorneys' fees.