In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3844

NICKI G. WIPF,

*Plaintiff-Appellant,*

*v.*

LISA KOWALSKI, M.D., and
MARSHALL CLINIC EFFINGHAM, S.C.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 C 4078—**J. Phil Gilbert**, *Judge.*

———————

ARGUED APRIL 30, 2007—DECIDED MARCH 12, 2008

———————

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* While performing a laparoscopic cholecystectomy to remove Nicki Wipf's gallbladder, Dr. Lisa Kowalski accidentally cut Wipf's common bile duct. As a result, Wipf underwent various corrective procedures with painful side effects. Wipf filed a diversity suit against Dr. Kowalski and her employer, Marshall Clinic Effingham, S.C., for medical malpractice, and a jury found Dr. Kowalski had not breached the applicable standard of care. On appeal Wipf argues the

jury's verdict is against the manifest weight of the evidence, or alternatively, a new trial is warranted based on various erroneous evidentiary and other rulings by the district court. Because the jury's verdict is supported by the evidence and the district court did not abuse its discretion in its evidentiary and other rulings before and during trial, we affirm.

## I. Background

In mid-April 2003, Nicki Wipf went to her family doctor complaining of recurrent epigastric pain. Wipf's doctor referred her to a surgeon, Dr. Lisa Kowalski, who recommended an operation to remove Wipf's gallbladder. On May 1, 2003, Dr. Kowalski performed a laparoscopic cholecystectomy ("lap-chole," for short), a procedure that involves transecting two structures: the cystic artery and the cystic duct. Dr. Kowalski, however, made a mistake and cut Wipf's common bile duct, having mistaken it for the cystic duct. She realized her error later in the procedure.

Dr. Kowalski notified Wipf's family of the mistake and had Wipf transported by ambulance to Barnes-Jewish Hospital in St. Louis where another surgeon, Dr. Linehan, performed a corrective operation the following day. That procedure involved cutting a section of Wipf's small bowel and using it to create a new bile duct. After this operation, Wipf's follow-up care was overseen by Dr. Picus. When Wipf later developed a duct blockage, Dr. Picus performed a procedure to insert a catheter into Wipf's bile duct to drain bile and thereby avoid further blockage or damage. Wipf's subsequent treatment included dilating the reattachment site where the bile duct

and the small bowel were sewn together, and catheter maintenance and replacement. Around April 2004 (almost one year after the lap-chole went awry), Wipf's catheter was removed.

A year later, Wipf filed a diversity action in federal court alleging medical negligence. A jury found for Dr. Kowalski and the Marshall Clinic. Wipf moved for judgment as a matter of law or, in the alternative, for a new trial. The motion was denied, and Wipf's timely appeal followed.

Wipf argues, as she did in her posttrial motions, that the jury's verdict is against the manifest weight of the evidence; she also raises several evidentiary and jury instruction issues. Accordingly, a summary of the medical testimony pertaining to lap-choles in general and Wipf's procedure in particular is in order. The medical experts testified that during a typical lap-chole, the surgeon inserts three or four "trocars"—narrow, sleeve-like tubes— into small incisions in the patient's abdomen. Various tools, including a light source, clasps, retractors, a camera, and a cutting instrument, can then be passed through the trocars. The surgeon does not view the patient's organs directly as he would during an "open" procedure; instead, a camera is passed through one of the trocars which transmits a magnified image that the surgeon views on a screen or monitor.

Using the screen images as a guide, the surgeon identifies the anatomy in the hepatobiliary[1] region before transecting certain structures. The surgeon must transect

---

[1] Hepatobiliary refers to the liver and the bile or biliary ducts. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 808 (29th ed. 2000).

two structures: the cystic artery and the cystic duct. There are different methods for identifying the appropriate anatomical structures before proceeding, and this is where the expert testimony diverged.

Dr. Kleier, a surgeon and Wipf's expert witness, explained that the gallbladder is generally encased in fatty tissue, and the surgeon must pull away this tissue in order to identify the two structures exiting the gallbladder that need to be transected. Dr. Kleier opined that several methods of identifying biliary anatomy should be employed to avoid any mistaken identification; if these methods are properly used, he testified, the surgeon should never transect the wrong duct. Dr. Kleier testified that the surgeon must achieve "the critical view"—a view of the area where both the artery and duct are visible coming directly out of and attached to the gallbladder—through meticulous dissection. If the surgeon is still uncertain about the location or identity of structures after using this process, he should perform a cholangiogram, which involves a type of x-ray in which dye is injected through a catheter into the cystic duct to identify structures. Alternatively, he testified, the surgeon should convert to a nonlaparoscopic or "open" procedure.

The standard of care, according to Dr. Kleier, requires identification of the cystic duct with *absolute certainty* before transection, a standard Dr. Kleier maintained Dr. Kowalski breached. Drawing upon guidelines issued by the Society of American Gastrointestinal and Endoscopic Surgeons, Dr. Kleier testified that Dr. Kowalski failed to meticulously dissect Wipf's anatomy and failed to properly achieve the critical view. Dr. Kleier also testified that Dr. Kowalski did not properly retract the

gallbladder during the procedure, thus obscuring her view, and failed to either perform a confirmatory cholangiogram or convert to an open procedure.

Dr. Scott Peckler, a general surgeon and one of Dr. Kowalski's experts, disagreed with Dr. Kleier's conclusion that Dr. Kowalski had breached the standard of care. Dr. Peckler testified that no method of identification, including the critical view, is free of potential risks or errors. He explained that a surgeon is required to satisfy himself that he has correctly identified the relevant anatomical structures, and according to Dr. Peckler, that is what Dr. Kowalski did. She used three of four available identification techniques: (1) the "infundibular" technique, which involves stripping off tissue to identify the cystic duct; (2) the critical view, which Dr. Peckler described as dissecting out an anatomical structure called the Triangle of Calot;[2] and (3) dissecting the cystic duct in order to perceive it merging with the common hepatic duct to form the common bile duct. In contrast to Dr. Kleier's position, Dr. Peckler opined that the standard of care did not require Dr. Kowalski to perform a cholangiogram—a procedure that he testified would have entailed its own risks. Another surgeon and expert for the defense, Dr. Abecassis, though primarily testifying about the corrective procedures Wipf underwent, seconded Dr. Peckler's opinion that Dr. Kowalski complied with the standard of care by using accepted procedures to satisfy herself it was the cystic duct that she was about to transect.

---

[2] The Triangle of Calot refers to "the triangle formed by the cystic artery superiorly, the cystic duct inferiorly, and the hepatic duct medially." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1871 (29th ed. 2000).

## II. Discussion

Wipf's primary argument on appeal is that the jury's verdict is against the manifest weight of the evidence and therefore she is entitled to a new trial. On appeal the trial court's denial of Wipf's motion for a new trial is reviewed for abuse of discretion. *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003); *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995). Wipf bears the heavy burden of showing the district court's denial of her motion was unreasonable. *See Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004); *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004). We review the evidence in the light most favorable to the prevailing party and will uphold the jury's verdict if a reasonable basis in the record supports it. *Kapelanski*, 390 F.3d at 530.

Under Illinois law, a plaintiff bringing a medical negligence/medical malpractice action has the burden of proving: "(1) the proper standard of care for the defendant physicians; (2) an unskilled or negligent failure to comply with the appropriate standard; and (3) a resulting injury proximately caused by the physicians' failure of skill or care." *Jinkins v. Evangelical Hosps. Corp.*, 783 N.E.2d 123, 126-27 (Ill. App. Ct. 2002) (citing *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986)); *Walski v. Tiesenga*, 381 N.E.2d 279, 282 (Ill. 1978). Generally, these elements must be established through expert testimony. *See Addison v. Whittenberg*, 529 N.E.2d 552, 556 (Ill. 1988). In this case, Wipf attempted to persuade the jury that the standard of care required absolute certainty in the identification of the biliary anatomy and that this standard is always violated when a surgeon misidentifies and cuts the wrong duct. The jury's acceptance of Dr. Kleier's testimony

was critical for her to prevail on these points; he opined that all injuries like Wipf's result from negligence per se.

Of course, Dr. Kleier's was not the only expert testimony about the standard of care that the jury heard. Dr. Peckler agreed surgeons must be certain about anatomy identification but differed from Dr. Kleier as to what "certain" meant in this context. Dr. Peckler explained that a surgeon who uses accepted identification techniques until he has satisfied himself that he has correctly identified the structures to be transected has complied with the standard of care. Dr. Abecassis echoed this view. Both Drs. Peckler and Abecassis emphasized that no single method is without potential risk to the patient. The jury, accepting Dr. Peckler's opinions, reasonably could have found Dr. Kowalski adhered to the standard of care by using several accepted methods of identification and satisfying herself that she had accurately identified the appropriate structures to be transected. Importantly, the evidence established that Wipf's anatomy contained certain irregularities that made the identification process difficult. Wipf's common bile duct was on the small side—only 3 millimeters in diameter—which made it resemble a cystic duct. Her common bile duct looked like it was entering the gallbladder because it was attached very tightly due to the presence of scar tissue, and the cystic duct was stuck behind the gallbladder out of plain sight. The jury, having heard this evidence and accepting the testimony of the defense experts, reasonably could have concluded that Dr. Kowalski was not negligent.

On appeal Wipf argues the jury should have decided the case the opposite way. Indeed, the jury might have done so; but this does not mean that the verdict was against the manifest weight of the evidence. *See Jefferson Nat'l Bank*

*of Miami Beach v. Cent. Nat'l Bank in Chi.*, 700 F.2d 1143, 1155 (7th Cir. 1983) ("The inquiry on appeal is whether the result reached by the jury is one which is reasonable on the facts and evidence, not whether other conclusions might also have been reached."). We will not supplant the jury's reasonable and factually supported verdict with our own judgment. *See Cont'l Air Lines, Inc. v. Wagner-Morehouse, Inc.*, 401 F.2d 23, 30 (7th Cir. 1968) (quoting *Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129, 133 (3d Cir. 1965)). Especially in a case of dueling experts, as this one was, it is left to the trier of fact, not the reviewing court, to decide how to weigh the competing expert testimony. *See Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 237-38 (7th Cir. 1983) ("It is within the province of the jury to determine which of two contradictory expert statements is deserving of credit.").

Wipf next claims the district court committed various errors during trial. Most of these claimed errors involve evidentiary matters, rulings we review for abuse of discretion.[3] *United States v. Loggins*, 486 F.3d 977, 981 (7th Cir. 2007); *Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006). Wipf first argues the district court erred by

---

[3] Several of Wipf's evidentiary arguments are cursory and undeveloped; we address only those that have been properly developed. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) (quoting *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.")); *see also Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir. 1998); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

denying her motion in limine and permitting the jury to hear about a 2005 article by a nontestifying expert, Dr. Strasberg. Dr. Kowalski responds that Wipf did not object at trial to the reading of the contested article and, in fact, Wipf's counsel opened the door to its introduction.

We first take up Dr. Kowalski's contention that Wipf failed to preserve this issue for appeal by raising the objection in a motion in limine but failing to renew it at trial. Rule 103(a) of the *Federal Rules of Evidence* provides: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." The advisory committee note discussing the rule's amendment in 2000 explains: "When the ruling is definitive, a renewed objection or offer of proof at the time the evidence is to be offered is more a formalism than a necessity." FED. R. EVID. 103, Advisory Comm. Notes, 2000 Amendment; *see also Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 940 (7th Cir. 2006); *Olson v. Ford Motor Co.*, 481 F.3d 619, 629 n.7 (8th Cir. 2007). In her motion in limine, Wipf sought to exclude testimony about certain of Dr. Strasberg's articles, including ones written in 1995, 2000, and 2005. This motion was denied. Because she made this objection prior to trial and the district court rendered a definite ruling on it, the issue is preserved for appeal regardless of whether Wipf renewed the objection at trial.

When Dr. Kleier was on the stand, Wipf's counsel asked him about an *American College of Surgeons* article by Dr. Strasberg published in 2000 which posited that a biliary injury is more likely when cystic duct identification is accomplished solely by means of the infundibular

technique.[4] During cross-examination, Dr. Kowalski's counsel asked Dr. Kleier about another of Dr. Strasberg's articles—this one published in 2005—in which Dr. Strasberg tempered some of his earlier views in the 2000 article. In this later article, Dr. Strasberg now found the infundibular technique acceptable. Wipf argues that cross-examination on this article should not have been permitted because the article was published two years after Wipf's procedure and is not learned authority. We disagree.

As a general rule, there is certainly nothing problematic about asking an expert about materials he has read that relate to an issue at trial. Dr. Kleier acknowledged he was familiar with Dr. Strasberg's updated opinions as expressed in the 2005 article. Beyond that, we are unable to assess the import of the article for ourselves; it is not included in the record on appeal.[5] But assuming the accuracy of the parties' description of the article's contents, we simply do not see how the cross-examination of Dr. Kleier about it was in any way improper. Dr. Kowalski's counsel asked only a few questions about the 2005 article, and essentially the same information came in through Dr. Peckler's testimony. That the article postdated Wipf's operation does not necessarily make it inadmissible. To the extent that Dr. Kleier was questioned on direct examination about

---

[4] The infundibular technique, according to Dr. Kleier's testimony, involves "the initial dissection of taking the fat and the filmy tissue off of the gallbladder and locating the neck of the gallbladder where it joins the cystic duct."

[5] Nor does the article appear to have been admitted into evidence at trial.

Dr. Strasberg's 2000 article, cross-examining him about the 2005 article, in which Dr. Strasberg updated his views, strikes us as relevant and fair. We see no abuse of discretion here.

Wipf next claims the district court erroneously failed to keep the issue of informed consent away from the jury. This issue was the subject of pretrial motions from both the plaintiff and the defense; Wipf initially sought to preserve it as an additional basis for Dr. Kowalski's alleged negligence but later said she was not seeking recovery for insufficient or lack of informed consent. The district court's pretrial rulings basically left the issue to be developed at trial. Wipf's counsel proceeded to introduce the topic of informed consent in questions to Dr. Picus and Dr. Kleier; Dr. Kowalski's counsel explored the subject more fully with defense witnesses.

We acknowledge that the issue of informed consent was irrelevant once Wipf removed it as a basis of her claim; the district court's pretrial rulings on this subject could have been more definitive on this matter rather than leaving it to be ironed out during trial. But this does not automatically warrant reversal. We must ask whether the presentation of testimony on this subject affected Wipf's substantial rights, *see* FED R. CIV. P. 61, and we conclude it did not. The parties' closing arguments and the jury instructions clearly focused on the issue of the standard of care and the alleged breaches that formed the basis of Wipf's claim of medical negligence. The evidentiary detours into the issue of informed consent were not pervasive and did not create an undue risk of juror confusion.

Relatedly, Wipf claims the district court erred by failing to provide the jury with her proposed informed consent instruction. That proposed instruction read:

Although evidence has been received on informed consent, you are instructed that the Plaintiff is not making any claim of lack of informed consent. Likewise, it is not a defense to the Plaintiff's professional negligence claim that informed consent was given. Under the law, while a patient may consent to risks, she does not consent to negligence.

To succeed on appeal, Wipf must show that the instructions given by the court did not adequately state the law and she was prejudiced by the refusal to give her proposed instruction because the jury was likely confused or misled. *Susan Wakeen Doll Co., Inc. v. Ashton-Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000). She has not identified any errors in the instructions given. We have already determined that the evidence about informed consent was not likely to confuse or mislead the jury; while a cautionary instruction might have been helpful, it was not required. The district court's refusal to give Wipf's proposed informed consent instruction did not affect her substantial rights.

Wipf also contends the district court improperly denied that portion of her motion in limine seeking to exclude a video of Dr. Kowalski performing a normal laparoscopic cholecystectomy and other visual aids showing "normal" biliary anatomy (in contrast to Wipf's biliary anatomy). The decision whether to allow the use of demonstrative exhibits is discretionary, and we review only for abuse of that discretion. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1278 (7th Cir. 1988). The video, beyond its role as an educational tool for the jury, was relevant to Dr. Kowalski's effort to refute Dr. Kleier's opinion that her three-trocar technique did not comport with the

standard of care. Dr. Kleier insisted another technique (the four-trocar technique) was the standard. The video demonstrated that the three-trocar technique could be used to successfully retract a part of the gallbladder.

Wipf does not contest the video's probative value, but rather focuses on the possibility that the video preconditioned the jurors' minds to accept the defense's theory of how Wipf's procedure was performed. This concern is unfounded. The district court gave a cautionary instruction to the jury clarifying the limited purpose of the video and dispelling any potential impression that the video showed or simulated the actual events of Wipf's procedure. *See United States v. Chavis*, 429 F.3d 662, 668-69 (7th Cir. 2005) (finding that limiting instruction lessened possibility that evidence would have prejudicial effect). Under these circumstances, admission of the videotape and other demonstrative exhibits was not an abuse of discretion.

Finally, Wipf asks us to order a new trial based on certain comments made by Dr. Kowalski's counsel during closing argument which she characterizes as unfairly disparaging of her case or, in one instance, improperly invoked sympathy for Dr. Kowalski. Wipf's counsel failed to lodge contemporaneous objections to most of these statements; the district court sustained the two objections her counsel made during closing argument. We have reviewed the comments Wipf now asserts were objectionable and find none that misstated the evidence or were so inflammatory as to have misled or improperly swayed the jury. Moreover, the district court properly instructed the jurors to disregard anything said during opening statements and closing arguments that differed from their own recollections of the evidence. The comments made

during closing argument, though perhaps somewhat overzealous, do not warrant a new trial.

AFFIRMED.