In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2798

ALLEN PLYLER,

*Plaintiff-Appellant,*

*v.*

WHIRLPOOL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 6637 — **Geraldine Soat Brown**, *Magistrate Judge.*

ARGUED DECEMBER 6, 2012 — DECIDED MAY 5, 2014

Before FLAUM, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Allen Plyler sued Whirlpool
Corporation, alleging that a Whirlpool microwave oven started
a fire that injured him. Proceeding by consent before a
magistrate judge on claims of strict products liability and
negligent recall, a jury returned a verdict in favor of Whirlpool.
Plyler moved for a new trial, asserting that the jury verdict was
against the manifest weight of the evidence. He also challenged

two evidentiary rulings, one that limited his testimony to his observations and another that allowed questions about the relationship between the fire and his later divorce. The district court denied Plyler's motion for a new trial, and he appeals. Because the district court did not abuse its discretion in concluding that the jury verdict was supported by the evidence or in rendering the two challenged evidentiary rulings, we affirm the judgment of the court.

## I.

The fire occurred about seven years after Plyler purchased a Whirlpool microwave oven and installed it above the stove at his house. On October 10, 2006, at about 9:00 p.m., Plyler used the microwave to heat food. Eight hours later, around 5:00 a.m., Plyler's houseguest woke him, warning him of a fire in the microwave. When Plyler went downstairs and looked at the microwave, he saw three fires inside of it and noticed an orange glow near the top of the unit. After attempting to put out the fire himself, Plyler called for help. Firefighters arrived and extinguished the fire, but Plyler suffered physical and emotional injuries. He injured his elbow and knee while he ran into and out of his house during the fire, and he also experienced post-traumatic stress disorder that he attributed to watching his house burn. (The damage to his property is not at issue in this case.)

At the trial on the negligent recall and strict liability claims, the parties' evidence focused on the cause of the fire. An investigator for the fire department determined that the fire had originated near the top of the microwave, but he could not identify a specific cause and reported the cause as

"undetermined." Plyler blamed the fire on a product defect that had led Whirlpool in 2001 to recall several brands of microwaves. Larry Latack, Whirlpool's Director of Global Product Safety, testified about that defect and when it posed a risk of fire. The recalled microwaves posed a fire hazard only if two circumstances were present: (1) the microwave contained splattered food that had gone uncleaned for an extended time, and (2) the microwave was running at the time of the fire. Plyler testified that he kept the microwave very clean and never left splattered food remaining inside the unit. He also testified that on the night of the fire, the microwave had been off for several hours and was not running when the fire started.

The trial evidence on the negligence claim also covered testimony about the effectiveness of Whirlpool's recall. After Whirlpool discovered that 1.8 million microwaves contained a defect that posed a fire risk, the corporation issued a recall through the Consumer Product Safety Commission. Whirlpool then mailed recall notices directly to consumers who had purchased the affected microwaves and submitted a product registration card to Whirlpool. In addition, it released several news announcements about the recall. Although the average recall leads to a company repairing or replacing only 10 to 15 percent of the affected units, Latack testified that through its efforts, Whirlpool was able to repair 75 percent of the microwaves covered by the recall. Plyler responded that he never received notice about the recall, but he could not remember whether he had submitted a product registration card for his microwave. He testified that he paid for the microwave with a credit card, and opined that Whirlpool

should therefore have been able to obtain from the dealer his contact information and notify him, along with all other credit card purchasers, of the recall.

The jury found in favor of Whirlpool on the negligence and strict liability claims, prompting Plyler to move for a new trial. He first challenged the jury's verdict, arguing that it was against the manifest weight of the evidence. The magistrate judge concluded, however, that a rational jury could have accepted Latack's testimony that the microwave posed a fire hazard only if heavy food had accumulated inside the unit and the microwave was in operation. Because Plyler had testified that his microwave was both clean and off at the time of the fire, it was reasonable for the jury to find that the microwave was not the cause of the fire. On the negligence claim, the court ruled that a jury could have reasonably rejected Plyler's argument about the additional efforts Whirlpool should have undertaken to notify him of the recall. Plyler's argument, the court explained, did not undercut the considerable steps that the corporation had undisputably taken to contact consumers, which made Whirlpool's recall far more successful than the average recall.

Plyler's motion for a new trial also asserted that the court had improperly restricted his testimony in two respects. First, the court had refused to allow Plyler to testify to his "interpretation" of what he observed, limiting him only to his actual observations. (The court asked Plyler's counsel if he objected to this restriction, and counsel said "No."). The court explained that this restriction was correct because it prohibited Plyler, a lay witness, merely from giving expert testimony, but still allowed him to give "extensive testimony about his

perceptions of the fire." Thus Plyler could and did "testif[y] about what he saw in the photographs taken after the fire, including the extent and direction of the fire." The second evidentiary ruling that Plyler attacked was the court's decision to allow Whirlpool to question Plyler about his divorce, which occurred after the fire. Because Plyler had alleged that the fire had caused him emotional distress, the court ruled that Whirlpool was entitled to explore whether his divorce had contributed to his mental and emotional distress.

## II.

On appeal Plyler advances three reasons that the district court abused its discretion when it denied his motion for a new trial. First, he repeats his argument that the jury's verdict was against the manifest weight of the evidence. He next maintains that the district court improperly barred him from offering his lay opinion about the source and direction of the fire. And finally, Plyler insists that the district court erred when it allowed Whirlpool to question him about his divorce.

Our review of a decision denying a new trial is "extremely deferential" because the district court, having seen the presentation of the evidence and the course of the trial, is in the best position to determine whether the verdict was against the manifest weight of the evidence. *Galvan v. Norberg*, 678 F.3d 581, 588 (7th Cir. 2012); *see also Whitehead v. Bond*, 680 F.3d 919, 928–29 (7th Cir. 2012). A new trial is warranted only if "the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Whitehead*, 680 F.3d at 928 (internal quotation marks omitted).

We begin with Plyler's argument that the evidence unequivocally demonstrated that the microwave started the fire. He points to his own testimony that he saw flames on the top of the microwave and to the testimony of a fire investigator who concluded that the fire appeared to originate on top of the microwave. But Plyler's argument does not consider the record as a whole. Latack, Whirpool's Director of Global Product Safety, testified that the microwave posed a fire risk only if it contained splattered food and was running, and Plyler conceded that neither condition existed when the fire started. To justify a reversal, Plyler must do more than identify favorable evidence that, if isolated from Whirlpool's opposing evidence, would support his conclusion. *See Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008); *Lowe v. Consol. Freightways of Del.*, 177 F.3d 640, 643 (7th Cir. 1999). He must show that the jury's verdict is against the clear weight of all the evidence. *See Whitehead*, 680 F.3d at 927. When we view the evidence in the light most favorable to Whirlpool, as we must when reviewing a verdict in its favor, *see Galvan*, 678 F.3d at 588; *Wipf*, 519 F.3d at 384, we conclude that the jury could have reasonably accepted the evidence offered by Whirlpool that the microwave did not cause the fire. By accepting that evidence refuting causation, the jury reasonably rejected both the negligence and strict liability claims. *See Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010) (explaining that proof of causation is vital to both negligence and strict products liability claims).

Although the jury's verdict is justified by the evidence disproving causation alone, Plyler asserts that the weight of the evidence establishes that, for his negligence claim, Whirlpool

breached the duty of care that it owed him for a recall. He insists that his testimony—that he purchased his oven with a credit card—provided a "sufficient factual basis" for the jury to conclude that Whirlpool should have done more to track him down and advise him of the recall. But again, to warrant a new trial Plyler must do more than show that the jury could have reached the opposite conclusion. *See Wipf*, 519 F.3d at 385. Rather, he must establish that the magistrate judge abused her discretion in concluding that the jury's verdict was justified. *See Whitehead*, 680 F.3d at 928. Plyler has not done so. Whirlpool presented evidence that, through its several recall notices (news announcements and mailings directly to consumers who completed product registration cards), it was able to rework 75 percent of the affected microwaves, far better than the average consumer product recall. The jury was not required to accept Plyler's argument that, because microwave dealers may have possessed his and other purchasers' credit card information, Whirlpool's above-average recall efforts fell short of due care. Thus, the district court properly concluded that the jury's verdict was not against the clear weight of the evidence.

Plyler next asserts that the district court erred when it restricted him to offering testimony based on his own perceptions. He contends that this ruling erroneously barred him from testifying to his inferences about the cause of the fire because those inferences were "tethered" to his perceptions. Putting aside the likelihood that his counsel waived this contention in the district court when he said that he had no objection to the restriction, we conclude that the magistrate judge correctly enforced Federal Rule of Evidence 701. Under

that rule, the judge properly allowed Plyler to testify about events that he observed, but not his interpretation of them. As a lay witness, Plyler could testify to his observations of the fire and its aftermath, but not draw inferences about its origin, which requires specialized knowledge. *See United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008) (stating that lay opinion testimony is admissible only to help jury understand facts about which witness is testifying); *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (explaining that lay opinion testimony is not admissible to "provide specialized explanations or interpretations that an untrained laymen would not make if perceiving the same acts or events.") (internal citation and quotation marks omitted). The magistrate judge thus properly limited Plyler to offering testimony based only on his own perceptions.

Finally, Plyler challenges the district court's decision to allow Whirlpool to cross-examine him about his divorce. He argues that his divorce did not contribute to the emotional distress that followed the fire, so he contends that questions about his divorce were irrelevant. Evidence is relevant if it has "any tendency to make a fact more or less probable," *see* FED. R. EVID. 401, and we give significant deference to a district court's decision weighing the probative value against prejudice, *see Whitehead*, 680 F.3d at 930; *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005). The inquiry into the emotional impact of Plyler's divorce was relevant to damages because, after Plyler testified that the fire caused him emotional distress, Whirlpool was entitled to explore whether—despite his denial—other sources, including his divorce, contributed to his emotional distress. *See* FED. R.

EVID. 401. Therefore, the district court did not abuse its discretion in allowing questions about the emotional impact of his divorce.

AFFIRMED.