NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 18, 2015[*]
Decided June 24, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-3617

| | |
|---|---|
| YOLANDA D. YOUNG-SMITH, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
|     *v.* | No. 3:07-CV-629 JVB-JEM |
| UNITED STEELWORKERS OF AMERICA, AFL-CIO, CLC, et al., <br>     *Defendants-Appellees*. | Joseph S. Van Bokkelen, <br> *Judge*. |

**O R D E R**

After Yolanda Young-Smith was fired from her job with Bayer Healthcare, she sued Bayer and her union, United Steelworkers, AFL-CIO, CLC Local 12273. Young-Smith settled her claims against Bayer, the Union received partial summary judgment, and after a trial Young-Smith lost on her remaining claim against the Union. On appeal Young-Smith contends that the district court committed errors assessing the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

evidence. Because we disagree with each of Young-Smith's arguments, we affirm the judgment.

Bayer fired Young-Smith after a conflict between her and two other employees in 2006. According to Young-Smith, after she learned that two of her coworkers, Rebecca Holt and Jimmy Robinson, were having a sexual affair, Holt became hostile and threatened to hurt her. Young-Smith contacted Holt's husband and told him of the affair, hoping that Holt would stop threatening her. These events led Bayer's human-resources supervisor to call a meeting with Holt, Robinson, and Young-Smith. But Young-Smith refused to attend the meeting because she feared for her safety. Her refusal led Bayer to issue Young-Smith a disciplinary note and suspend her for the remainder of her shift. (She tried to grieve the discipline, but the Union withdrew the grievance before it reached arbitration.) Bayer also instructed Young-Smith to stop contacting Holt's husband because she was disrupting the workplace. A few weeks later, in August 2006, Bayer fired Young-Smith after she disobeyed that order and persisted in contacting Holt's husband.

The Union filed a grievance asserting that Young-Smith's dismissal lacked just cause. She received an expedited hearing, which the Union had the right to demand in a discharge case. After the hearing, the Union summarized its argument: Holt and Robinson's affair, not Young-Smith, was the source of the workplace discord, yet Bayer rewarded Holt, who is white, with a generous severance package and fired Young-Smith without cause. The Union did not explicitly argue, as Young-Smith wanted, that the firing was race discrimination. The arbitrator ruled against Young-Smith, finding that Bayer had cause to fire her because she "repeatedly continued to fuel a controversy with two other employees, significantly burdening the workplace with private issues, long after she had been ordered not to do so." The other two employees, the arbitrator explained, "to the best of management's knowledge, . . . had stopped disrupting the workplace."

Young-Smith next turned to federal court with this suit. After she settled her claims against Bayer, the Union moved for summary judgment. In response, Young-Smith articulated two legal theories against the Union.

Her first claim is that the Union handled her discharge grievance arbitrarily. Because of her race (black), she argued, the Union did not consider a race-based grievance of her discharge, refused to allow her counsel to attend the arbitration, and insisted on an expedited arbitration, where she believes her chances of winning were diminished. The Union replied that it pursued only a just-cause grievance because Bayer

bears the burden of proof in those grievances, but not in race-based grievances, and Young-Smith presented no evidence that Bayer discharged her for racial reasons. Moreover, the Union continued, it handles all discharge-related grievances through expedited arbitration to reduce the time an employee remains out of work, and it excludes private counsel in arbitrations because they undermine the Union's role as the employee's representative.

Her second claim has two parts: First, beginning in 2002 the Union had a practice of refusing requests by blacks to bring race-based grievances, and, second, it adhered to that practice by ignoring her requests twice in 2006 to bring such grievances. These grievances would have had merit, she added, because Bayer disciplines blacks more severely than whites, as when it disciplined her for not attending the human-resources meeting, even though whites have ignored similar meetings. The Union countered that it had often filed race-based grievances from employees in this time frame, but it had not received any such requests from Young-Smith in 2006.

The district court ruled on the Union's motion for summary judgment. On Young-Smith's claim that the Union handled her discharge grievance arbitrarily, the court granted the motion because the Union gave uncontradicted evidence that it handled her grievance legitimately. But citing to fact disputes, the court sent to trial Young-Smith's claims that the Union had a practice of refusing requests, including hers, to raise race-based grievances. Before trial, Young-Smith fired her attorney, and, alleging fraud, she asked the court to reconsider earlier rulings. But when she was unable to prove the fraud, the district court denied the motions and sent the case to trial.

A five-day jury trial ended in the Union's favor. The district court entered judgment as a matter of law on Young-Smith's claim that the Union had a general practice of refusing to file race-based grievances. It relied on the uncontradicted testimony of three witnesses who said that the Union had either filed race-based grievances or had helped employees pursue such grievances. The jury found that, although Young-Smith had asked the Union to file race-based grievances in 2006 and it declined to do so, its decision was not racially biased. After entering judgment in the Union's favor, the district court denied Young-Smith's post-judgment motions.

Young-Smith's brief on appeal is difficult to follow, but we discern three main contentions. First, Young-Smith challenges rulings made during her jury trial. We cannot address these arguments because she failed to submit, as is her duty, *see* FED. R. APP. P. 10(b)(2), the full transcripts of the trial. Earlier during this appeal, we warned her that she must provide a copy of the "full" trial transcript on appeal, rather than ask the

court reporter to find the portions that interest her. *See* Order, Jan. 28, 2015, No. 14-3617 ("The court reporter is under no duty to perform the type of . . . searches that appellant seeks and that system of obtaining the transcript is not likely in the end to be any less expensive than simply paying for a full transcript."). Young-Smith is not proceeding in forma pauperis, and she does not contend that she cannot afford the trial transcripts. Under these circumstances, her decision to forego the transcripts, after we warned her that she needed them, precludes our review of alleged trial errors. *See Morisch v. United States*, 653 F.3d 522, 529–30 (7th Cir. 2011); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n.10 (7th Cir. 2003).

One trial-related issue warrants further comment. Young-Smith contends that the judge erroneously instructed the jury on her claim that the Union unlawfully ignored her requests in 2006 to file race-based grievances. Under *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668–69 (1987), Young-Smith says, the Union violated Title VII and § 1981 if it systematically refused requests to file race-based grievances, even if its refusal was not based on race. Yet the district court required proof that its refusal was race-based.

Even if the district court should not have required proof of racial bias, *see Goodman*, 482 U.S. at 669, the error does not warrant reversal. Young-Smith did not press this argument in the district court, so our review is for plain error. *See* FED. R. CIV. P. 51(d)(2). Plain-error review requires that Young-Smith show that the error affected her substantial rights. *See Mesman v. Crane Pro Servs.*, 512 F.3d 352, 357 (7th Cir. 2008). But, again, without the trial transcripts, we have no idea if Young-Smith established that the Union systematically refused to file race-based grievances, and without that proof, any error is not plain. *See Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 439–40 (7th Cir. 2009) ("[W]here appellants cannot articulate how they are affected by the refused jury instruction, let alone how their 'substantial rights' were affected; there is no reason for this court to interfere."); *Prod. Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 700 (7th Cir. 2008) (even where district court clearly erred by giving wrong instruction, appellant still had burden of establishing that his substantial rights were effected).

Young-Smith's second set of arguments challenges the district court's grant of summary judgment to the Union on her claim that it arbitrarily handled her discharge grievance. First, she asserts that the district court procedurally erred by considering what she calls the Union's "untimely" motion. But the court extended the deadline for filing dispositive motions, and the Union filed its motion within that timeframe. Courts have the broad authority to set and revise deadlines. *See* FED. R. CIV. P. 6(b); *Griffin v.*

*Foley*, 542 F.3d 209, 217 (7th Cir. 2008); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605–06 (7th Cir. 2006). And Young-Smith has not articulated why the revision was unreasonable. Second, Young-Smith complains that she possessed, but her attorney refused to submit, additional evidence to oppose summary judgment. But she does not explain what that additional is, so the argument goes nowhere. Third, on the merits, she repeats her contention that the Union handled her grievance arbitrarily by bringing only a just-cause grievance, expediting her hearing, and barring her private counsel. But the Union offered uncontradicted evidence of its reasons for these actions: easier burden of proof in just-cause cases, reduced out-of-work time with expedited arbitrations, and avoidance of interference from outside counsel. These reasons were legitimate and not pretextual, so they defeated her claim that the union's conduct was arbitrary, *see Vaca v. Sipes*, 386 U.S. 171, 190–92 (1967), or discriminatory, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973); *Green v. Am. Fed'n of Teachers/Illinois Fed'n of Teachers Local 604*, 740 F.3d 1104, 1105–07 (7th Cir. 2014).

Finally, Young-Smith maintains that because her attorney and defense counsel defrauded the district court and pressured her into accepting a settlement from Bayer, the district court should have granted her motions to vacate its earlier rulings. In a separate suit, Young-Smith raised what appear to be substantially similar allegations against her and the Union's attorneys. We affirmed the dismissal of that suit for failure to state a federal claim. *See Young-Smith v. Holt*, 575 F. App'x 680 (7th Cir. 2014). Aside from the possible preclusive effect of that affirmance on these allegations, our review of the record uncovers no evidence to substantiate them. Therefore we are satisfied that the district court did not abuse its discretion in denying Young-Smith's motions based on these allegations. *See Selective Ins. Co. of S.C. v. City of Paris*, 769 F.3d 501, 507 (7th Cir. 2014); *In re Met-L-Wood Corp. v. Pipin*, 861 F.2d 1012, 1018–19 (7th Cir. 1988).

We have reviewed the remainder of Young-Smith's arguments on appeal and none has merit. Accordingly, the judgment of the district court is AFFIRMED.